# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

<table>
<tr><td>_____</td><td>:</td><td></td></tr>
<tr><td>DAVID MALEK,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Plaintiff,</td><td>:</td><td></td></tr>
<tr><td>v.</td><td>:</td><td>Civil Action No. 2:18-cv-03205-BRM-SCM</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>CHEF'S ROLL, INC.,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td>**OPINION**</td></tr>
<tr><td>Defendant.</td><td>:</td><td></td></tr>
<tr><td>_____</td><td>:</td><td></td></tr>
</table>

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Chef's Roll, Inc.'s ("Chef's Roll" or "Defendant") Renewed Motion to Dismiss Plaintiff David Malek's ("Plaintiff") Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) and Plaintiff's fraud claim (Count IV) pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 37.) Defendant moves in the alternative to transfer this action to the Southern District of California pursuant to 28 U.S.C. § 1404(a). (*Id.*) Plaintiff opposes the Motion (ECF No. 38), and Chef's Roll filed a Reply to Plaintiff's Opposition (ECF No. 39).[1] Having reviewed the filings submitted in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure

---

[1] Chef's Roll incorporated by reference its previous arguments on specific jurisdiction. (ECF No. 37-1 at 3 n.1.) Additionally, both parties extensively reference the declarations and exhibits submitted in support of and in opposition to Defendant's first Motion to Dismiss. (*See* ECF Nos. 37-1, 38-3, 39.) Accordingly, the Court has considered all submissions in ECF Numbers 7, 10, and 11 in deciding the instant Motion.

78(b), for the reasons below, Defendant's Renewed Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND[2]

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Plaintiff David Malek, a New Jersey resident, is owner and chief executive officer of Gunter Wilhelm Cutlery & Cookware ("Gunter Wilhelm"), located in New Jersey. (ECF No. 1 ¶ 2.) Thomas Keslinke and Frans van der Lee are the co-founders of Defendant Chef's Roll, Inc., a Delaware corporation with principal offices in California. (*Id.* ¶¶ 3, 5.) Chef's Roll operates a social media website for culinary professionals. (*Id.* ¶ 3.) Keslinke and van der Lee reside in Texas and California, respectively. (*Id.* ¶ 4.)

Plaintiff claims that Defendant and he entered into an agreement under which Plaintiff promised to assist in the promotion of Chef's Roll in exchange for Defendant's promises "to (1) make Gunter Wilhelm the exclusive cutlery and cookware vendor/manufacturer promoted on [Defendant's] website and (2) to provide [Plaintiff] with equity in Chef's Roll." (*Id.* ¶ 9.) Plaintiff also became an early investor in Chef's Roll in exchange for future equity in the company and a position on its board of advisors. (*Id.* ¶¶ 14-16, 20.) Plaintiff alleges that he fully performed his

---

[2] Because the Court writes primarily for the parties, the Court provides only an abbreviated factual and procedural history.

obligations under the agreement, which included, *inter alia*, securing positions at trade shows for Defendant and personally promoting Defendant's brand to industry insiders. (*Id.* ¶¶ 10, 27.) Plaintiff alleges, however, that Defendant has not fulfilled its obligations under the agreement. (*Id.* ¶ 27.) Defendant has not furnished Plaintiff with the stock that he was promised. (*Id.* ¶ 32.) Defendant removed Gunter Wilhelm from the Chef's Roll website and stopped promoting Gunter Wilhelm. (*Id.* ¶ 24.) Indeed, Plaintiff alleges that Defendant even began marketing itself with one of Gunter Wilhelm's competitors. (*Id.*) Plaintiff further alleges that Defendant, through Keslinke and others, made material misrepresentations to Plaintiff regarding Defendant's financial prospects and willingness to issue Plaintiff stock in exchange for his investments. (*Id.* ¶ 51.) According to Plaintiff, Defendant is now valued at over $30 million—growth attributable in part to Plaintiff's efforts and expense. (*Id.* ¶¶ 27-28.)

Plaintiff therefore brings this action asserting claims for breach of contract, unjust enrichment, quantum meruit, and fraud. (*Id.* ¶¶ 29-56). In May 2018, Defendant moved to dismiss the Complaint for lack of personal jurisdiction and improper venue, or in the alternative, to transfer the action to the Southern District of California. (ECF No. 7.) In July 2018, the Court preliminarily found that it lacked general personal jurisdiction over Defendant. (ECF No. 13 at 7). The Court reserved judgment on whether specific personal jurisdiction existed, denied the Motion without prejudice, and ordered the parties to engage in jurisdictional discovery. (*Id.* at 10.) Defendant now renews its Motion to Dismiss and its Alternative Motion to Transfer. (*See id.*)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all

inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires that the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pleaded; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint.'" *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### B. Rule 12(b)(2) Standard

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86-87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368 (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). Pursuant to Federal Rule of Civil Procedure 4(e), a district court may exercise personal jurisdiction according to the law of the state where it sits. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 (3d Cir. 2004) (citing N.J. Court Rule 4:4-4(c)). In other words, this Court's jurisdiction is

"constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank*, 954 F.2d at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Carteret Sav. Bank*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: specific jurisdiction and general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (citing *Int'l Shoe Co.*, 326 U.S. at 317); *see also Metcalfe*, 566 F.3d at 334 ("Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction."). Specific jurisdiction exists when the defendant's activities in the forum state: (1) were "continuous and systematic" and (2) gave rise to the plaintiff's claims. *Daimler*, 571 U.S. at 119. General jurisdiction requires only continuous and systematic contacts, and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

"Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the 'plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (citing *Pinker*, 292 F.3d at 368.) The defendant must have "'purposefully directed' his activities at residents of the forum and the litigation [must] result[] from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Metcalfe*, 566 F.3d at 334. Further, the Due Process Clause of the Fifth Amendment requires that a "defendant has constitutionally sufficient 'minimum contacts' with the forum" and that "the

court's jurisdiction comports with traditional notions of fair play and substantial justice." *Pinker*, 292 F.3d at 369 (citing *Burger King Corp.*, 471 U.S. at 474 and *Int'l Shoe Co.*, 326 U.S. at 316).

While the Supreme Court has not ruled out the possibility an individual could be subject to general jurisdiction because of "continuous and systematic contacts" with the forum, the Court has applied general jurisdiction only to corporate defendants. *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; *for a corporation*, it is an equivalent place, *one in which the corporation is fairly regarded as at home*.") (emphasis added). "It may be that whatever special rule exists permitting continuous and systematic contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990).

## III.    DECISION

Chef's Roll contends this Court should grant its Renewed Motion to Dismiss because the Court lacks personal jurisdiction over Chef's Roll, venue is improper, and Plaintiff has not pleaded a viable fraud claim. (*See* ECF No. 37-1.) Alternatively, Defendant contends the Court should transfer this action to the Southern District of California under 28 U.S.C. § 1404(a). (*See id.*) This Court addresses each argument in turn.

### A.  Specific Personal Jurisdiction

Because this Court has not held an evidentiary hearing, Plaintiff only bears the burden of proving a prima facie case of personal jurisdiction over Defendant. *See Metcalfe*, 566 F.3d at 330. To establish a prima facie case of specific personal jurisdiction, Plaintiff must show (1) Chef's Roll "purposefully directed [its] activities at [New Jersey];" (2) Plaintiff's claims "arise out of or relate to at least one of those activities;" and (3) "the exercise of jurisdiction otherwise comport[s]

with fair play and substantial justice." *See O'Conner v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal quotations and citations omitted). "[P]laintiff may not rely on bare pleadings alone" in such a showing, "but must come forward with affidavits and other competent evidence establishing with reasonable particularity the nature and extent of [D]efendant's contacts with [New Jersey]." *See Sadek v. Horovitz*, No. 10-2187, 2013 WL 12149254, at *6 (D.N.J. Mar. 28, 2013) (citing *Metcalfe*, 566 F.3d at 330).

Defendant argues that Plaintiff has not made this requisite showing. (ECF No. 37-1 at 5-10.) Defendant characterizes its relationship with Plaintiff as a unilateral one in which Plaintiff sought to invest in Chef's Roll after he learned it was a small start-up company. (*Id.* at 9-10.) Defendant alleges "Keslinke[] and Plaintiff connected via electronic correspondence through a mutual social media follower," and "Plaintiff first reached out to [Keslinke] telephonically to discuss a potential business arrangement between Plaintiff and Chef's Roll." (*Id.* at 4, 7.) Only in response to Plaintiff's inquiry, Defendant alleges, did Chef's Roll send Plaintiff information on investing. (*Id.* at 9.) Defendant avers that "[n]o aspect of the parties' business arrangement required conduct in or connection to New Jersey." (*Id.* at 8.) Defendant further contends that at no point during the parties' relationship did a Chef's Roll employee enter New Jersey or meet with Plaintiff in New Jersey for the purposes of their business arrangement. (*Id.* at 7.) Finally, Defendant alleges Keslinke knew neither that Plaintiff resided in New Jersey nor that Gunter Wilhelm was based in New Jersey. (*Id.* at 8.) Based on these factual allegations, Defendant argues that Chef's Roll did not purposefully direct its activities at New Jersey and that Plaintiff's claims did not arise out of or relate to any Chef's Roll activity in New Jersey. (*Id.* at 6-10.) Regarding "fair play and substantial justice," Defendant argues that it has no presence in New Jersey and that as a small company it will face substantial obstacles litigating in a distant forum. (ECF No. 7-1 at 13-14).

Defendant contends that because the events forming this lawsuit's core occurred in California, California has the stronger interest in this dispute. (*Id.*) Consequently, Defendant contends the Court's exercise of personal jurisdiction over it would not comport with fair play and substantial justice. (*Id.*)

Plaintiff paints a different picture of his relationship with Defendant. Plaintiff alleges Defendant initiated contact with Plaintiff because of his personal reputation and association with Gunter Wilhelm. (ECF No. 10 at 7.) Plaintiff alleges Defendant initiated contact with him for the specific purpose of establishing a business relationship and soliciting investment money. (*Id.*; ECF No. 38-3 at 9-10.) As such, Plaintiff argues Chef's Roll purposefully directed its activities at New Jersey. (ECF No. 38-3 at 9-10.) Plaintiff further argues that his contract and quasi-contract claims arise from those activities, as the claims concern Defendant's failure to compensate Plaintiff for his investment and the goods and services Plaintiff provided as part of Chef's Roll and Gunter Wilhelm's business partnership. (*Id.* 10-12.) Regarding "fair play and substantial justice," Plaintiff contends the burden on him to litigate in the Southern District of California would be greater than the burden on Defendant to litigate in this District. (*Id.* at 12-13.) Plaintiff states, "New Jersey has an interest in preventing nonresidents from breaching contracts with its citizens and fraudulently soliciting investments from its citizens." (*Id.* at 13.) Accordingly, Plaintiff argues that exercising personal jurisdiction over Defendant comports with traditional notions of fair play and substantial justice. (*Id.* at 12.)

The Court holds that Plaintiff has shown a prima facie case of personal jurisdiction over Chef's Roll on his contract, quasi-contract, and fraud claims. Defendant's emphasis on who initiated contact and on Chef's Roll's lack of physical presence in New Jersey is misguided. (*See* ECF No. 7-1 at 9-10; ECF No. 37-1 at 7-9.) "[W]ith respect to interstate contractual obligations, .

. . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp.*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). Although physical "presence during pre-contractual negotiations, performance, and resolution of post-contractual difficulties is generally factored into the jurisdictional determination," it is not dispositive. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001); *accord Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("[C]ontract negotiations with forum residents can empower a court to exercise personal jurisdiction over persons outside the forum. . . . Due process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised."). In this modern era where "communication by electronic facilities, rather than physical presence, is the rule," a more important consideration is whether there was an "intention to establish a common venture extending over a substantial period of time." *Gen. Elec. Co.*, 270 F.3d at 150-51. Moreover, "[i]t is not significant that one party or the other party initiated the relationship." *Id.* at 151.

Here, the record demonstrates that Defendant reached out beyond California with the intention of establishing a common venture extending over a substantial period of time with Plaintiff and Gunter Wilhelm, citizens of New Jersey. *See Burger King Corp.*, 471 U.S. at 473; *Gen. Elec. Co.*, 270 F.3d at 150-51. The evidence[3] includes the following:

- a December 22, 2013 email entitled "Partnership opportunity" written by Keslinke and directed to Plaintiff, wherein Keslinke introduces himself and Chef's Roll,

---

[3] The Court at this stage of the litigation must "assum[e] the sworn allegations that appear in . . . [Plaintiff's] affidavit and the other documentary evidence on record are true and constru[e] factual disputes in [his] favor." *Metcalfe*, 566 F.3d at 331.

states that "[he] would like to schedule a call with [Plaintiff] in regards to potentially partnering with Chef's Roll," touts his industry contacts, and says that "[he] welcome[s] the opportunity to discuss possible ways [they] can work together," (ECF No. 10-2; *see* ECF No. 38-1 at 48:17-49:12 (Keslinke authentication));

- a March 6, 2014 email from Keslinke to Plaintiff in which Keslinke states, "Chef's Roll is proud to partner with Gunter Wilhelm, and [is] looking froward [sic] to the road ahead," (ECF No. 10-4);

- a March 28, 2014 email from Keslinke to Plaintiff wherein Keslinke communicates "[i]f you are interested in forming a true partnership, let me know, and we can set up a conference call next week" and "[w]e would be honored to not only work with you in building our brands both nationally and internationally, together, but also sell your product on our website," (ECF No. 10-5);

- a May 13, 2014 email from Keslinke to Plaintiff discussing "an official partnership with Gunter Wilhelm" and requesting an introduction of Plaintiff's public relations team to his "so the two can collaborate on a message to announce [their] partnership," (ECF No. 10-7; *see* ECF No. 38-1 at 54:19-55:18 (Keslinke authentication));

- June 30, July 2, and July 26, 2014 emails from Keslinke to Plaintiff in which Keslinke appears to solicit an investment in Chef's Roll from Plaintiff and in which Keslinke asks for introductions to others who might be interested in investing in Chef's Roll, (ECF No. 10-12; *see* ECF No. 38-1 at 58:12-61:1 (Keslinke authentication));

11

- admissions from Keslinke that he told Plaintiff that Chef's Roll needed more cash than it had on hand to continue operating globally, that he asked Plaintiff to invest more cash, and that Plaintiff made two investments because of those requests, (ECF No. 38-1 at 32:20-34:14);

- August 18 and August 19, 2014 emails from Keslinke to Plaintiff in which Keslinke appears to follow up on a discussion regarding investment in Chef's Roll and in which Keslinke appears to solicit an additional investment from Plaintiff in exchange for placing Plaintiff on Defendant's board of advisors, (ECF No. 10-16);

- an August 22, 2014 email from Keslinke to Plaintiff attaching an investor term sheet, soliciting Plaintiff's signature, and explaining that the term sheet "helps show additional investors we have written intent from a lead investor," (ECF No. 10-17; *see* ECF No. 38-1 at 69:6-71:17 (Keslinke authentication));

- a September 1, 2014 email from Keslinke to Plaintiff attaching a draft investor update that states "[w]e have secured a $50,000 lead investment from David Malek, Partner at Gunter Wilhelm Cutlery International" and "[t]hrough our partnership with Gunter Wilhelm, Chef's Roll is invited to attend international trade shows providing strategic exposure to the Chef's Roll platform," (ECF No. 10-18; *see* ECF No. 38-1 at 73:3-74:3 (Keslinke authentication));

- an October 21, 2014 press release from Chef's Roll announcing that "in collaboration with Gunter Wilhelm, Chef's Roll, Inc. is honored to offer every ProStart culinary instructor/teacher a complimentary, premium profile for life," (ECF No. 10-19; ECF No. 10-1 ¶ 24); and

- a July 6, 2015 email from Keslinke to Plaintiff stating that "Chef's Roll has been

made possible by GW [a]nd the relationship you and I have formed has been wonderful (ECF No. 10-22; *see* ECF No. 38-1 at 77:5-12 (Keslinke authentication)).

This documentary evidence and Plaintiff's affidavit make clear that Defendant is "not be[ing] haled into [New Jersey] solely as a result of random, fortuitous, or attenuated contacts" or because "of the unilateral activity of" Plaintiff. *See Burger King Corp.*, 471 U.S. at 475 (internal quotations and citations omitted). Rather, Plaintiff's evidence demonstrates Defendant's "deliberate assumption of long-term obligations" to New Jersey citizens through Keslinke's solicitations of Plaintiff and Gunter Wilhelm to be business partners and investors. *See Gen. Elec. Co.*, 270 F.3d at 151. This Court therefore finds Plaintiff has adequately shown Chef's Roll purposefully directed its activities at New Jersey.[4] *See Sandy Lane*, 496 F.3d at 317.

Defendant asks this Court to find that it did not know Plaintiff resides in or Gunter Wilhelm is based in New Jersey, and consequently that Chef's Roll could not have intentionally directed its conduct at New Jersey. (*See, e.g.*, ECF No. 39 at 5-6.) The Court declines to do so.

"In considering a motion to dismiss on the basis of affidavits, a District Court must resolve all material factual disputes in favor of the plaintiffs." *Wellness Publ'g v. Barefoot*, 128 F. App'x 266, 268 (3d Cir. 2005); *see also Metcalfe*, 566 F.3d at 530 (same). Here, Plaintiff contends that Defendant knew or should have known it was dealing with a New Jersey resident and a New Jersey-based business. (ECF No. 38-3 at 16.) And he has provided enough evidence for the Court

---

[4] This finding includes Plaintiff's fraud claim. Because specific jurisdiction is claim specific, courts usually assess it on a claim-by-claim basis. *See Sandy Lane*, 496 F.3d at 317 n.3. Here, however, Plaintiff's bases his fraud claim on substantially the same facts as his contract and quasi-contract claims. (*Compare* ECF No. 1 ¶¶ 29-49, *with id.* ¶¶ 50-58.) Indeed, as discussed *infra* Section III.B, there is a question whether Plaintiff's fraud claim amounts substantively to anything more than his breach-of-contract claim. Thus, it is not necessary to analyze the fraud claim separately. *See Sandy Lane*, 496 F.3d at 317 n.3.

to reasonably infer that Defendant knew or should have known its conduct was directed at New Jersey. *See Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (finding that the defendants had purposefully availed themselves of the privilege of conducting business in Pennsylvania where "[t]hey were well aware, or should have been that they were dealing with a Pennsylvania bank"). Plaintiff testifies that the sales department email address through which Defendant initiated contact can be found on the "contact" page of Gunter Wilhelm's website, which indicates that Gunter Wilhelm is in New Jersey. (ECF No. 10-1 ¶¶ 3-4.) Indeed, Keslinke admitted that in "the very early stages of learning about [Plaintiff's] company," he visited Gunter Wilhelm's website. (ECF No. 38-1 at 28:19-23.) Many of the emails sent to Keslinke have a full Gunter Wilhelm signature block, which includes office and mobile telephone numbers with New Jersey area codes, and in some instances, a New Jersey address. (ECF Nos. 10-10, 10-13, 10-16, 10-22, 10-24.) Additionally, Plaintiff testifies he donated and shipped Gunter Wilhelm product from Gunter Wilhelm's New Jersey warehouse to Chef's Roll and Chef's Roll events. (ECF No. 10-1 ¶7.) Keslinke admits that Gunter Wilhelm provided free merchandise to Chef's Roll and that he was personally involved with the shipping. (ECF No. 38-1 at 27:15-28-8.)

Finally, considering the totality of the circumstances, the Court does not find it likely that Keslinke would not have known Plaintiff and Gunter Wilhelm resided in New Jersey. Plaintiff's affidavit and documentary evidence show that Keslinke's business relationship with Plaintiff and Gunter Wilhelm spanned at least 31 months. (ECF No. 10-3 ¶¶ 3, 29; ECF Nos. 10-2, 10-24.) Keslinke is the chief executive officer and a co-founder of Chef's Roll, and Chef's Roll described Plaintiff's investment as a "lead investment" in a draft investor update. (ECF No. 7-2 ¶ 1; ECF No. 10-18.) Keslinke in his emails to Plaintiff frequently referred to Chef's Roll and Gunter Wilhelm's relationship as a "partnership." (ECF Nos. 10-4, 10-5, 10-6, 10-7, 10-14, 10-18.)

Further, Keslinke and Plaintiff in their correspondence discuss personal matters such as their children, the stage of labor Keslinke's wife was in, and even the health of Keslinke's dog. (ECF Nos. 10-12, 10-13, 10-15, 10-16, 10-17, 10-18, 10-22.) The Court considers it highly unlikely that the topics of Plaintiff's and Gunter Wilhelm's residence were never broached.

Plaintiff's claims "arise out of or relate to" Defendant activities directed at New Jersey. *See Sandy Lane*, 496 F.3d at 317. Although the Third Circuit has not adopted a bright-line test for the relatedness requirement, the Circuit has held satisfying it requires a closer causal connection than but-for causation. *HS Real Co., LLC v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013) "[I]n contract cases," the Circuit "ha[s] effectively required substantive relevance." *Sandy Lane*, 496 F.3d at 320. This test "examines whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." *Id.* Here, Defendant through its agent Keslinke contacted New Jersey for the purpose of soliciting investment and forming a beneficial business relationship with two of its residents. The Court finds these contacts were "instrumental in . . . the formation of the [alleged] contract." *See Gen. Elec. Co.*, 270 F.3d at 150. Similarly, the alleged misrepresentations forming the basis for Plaintiff's fraud claim were communicated through a portion of these contacts. Moreover, "Chef's Roll disputes that any enforceable agreement exists between the parties." (ECF No. 37-1 at 6 n.3). As such, Defendant's contacts with New Jersey are relevant to the merits of each of Plaintiff's claims, and Plaintiff has shown a prima facie case of minimum contacts. *See Sandy Lane*, 496 F.3d at 317, 320.

Regarding the third prong, fair play and substantial justice, because Plaintiff has made a prima facie case of minimum contacts, the burden is on Defendant to "present a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 324 (emphasis added) (quoting *Burger King Corp.*, 471 U.S. at 477). Factors a court should consider

when balancing jurisdictional reasonableness include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies." *Id.*

This Court finds that Defendant has not presented a compelling case. *See id.* Defendant contends that because the events forming this lawsuit's core occurred in California, California has the stronger interest in this dispute. (ECF No. 7-1 at 13-14.) The Court disagrees. New Jersey "has a 'manifest interest in providing effective means of redress' when a foreign corporation reaches into the state and solicits its citizens." *Sandy Lane*, 496 F.3d at 325 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). As explained above, Defendant reached into New Jersey and solicited substantial investments from and substantial business relationships with Plaintiff and Gunter Wilhelm. Plaintiff is one alleging injury from these solicitations. (*See* ECF. No. 1.) Therefore, New Jersey has the stronger interest in adjudicating this dispute.

Defendant also argues that its status as a small company and its lack of physical presence in New Jersey creates a substantial burden on Chef's Roll to litigating in New Jersey. (ECF No. 7-1 at 13-14.) Although this is a valid consideration, *see Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 701 (3d Cir. 1990), the Court does not believe that litigation in New Jersey will impose an unfair burden on Defendant. This case is not one in which a business is being drawn into litigation on the other side of the world in a foreign nation's judicial system. *See Asahi Metal Indus. Co. v. Superior Court of Ca.*, 480 U.S. 102, 114 (1987). Even if Chef's Roll were an alien business entity, "the Supreme Court has stated, '[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.'" *See Sandy Lane*, 496 F.3d at 325 (quoting *Asahi Metal*, 480 U.S.

at 114). This case is also not one where a non-forum resident is being "unilaterally drawn into the forum by another." *See Grand Entm't*, 988 F.2d at 485 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Defendant, through the affirmative actions of its agent Keslinke, brought Chef's Roll in contact with New Jersey. *See id.* Defendant had clear notice that it would be subject to suit in New Jersey for claims arising from its interactions with Plaintiff, and Defendant could have "act[ed] alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers," or limiting its fundraising to California. *See World-Wide Volkswagen Corp.*, 444 U.S. at 297. Defendant chose not to. Because Chef's Roll has not presented a compelling case of unreasonableness, the Court holds that jurisdiction in New Jersey "comport[s] with fair play and substantial justice." *See Burger King Corp.*, 471 U.S. at 476.

Plaintiff has established all three prongs of the specific personal jurisdiction test.[5] *See Sandy Lane*, 496 F.3d at 317. Accordingly, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is **DENIED**.[6]

### B. Plaintiff's Fraud Claim

Defendant moves to dismiss Plaintiff's fraud claim for failing to state a claim upon which

---

[5] To the extent Defendant argues the *Calder* "effects" test must be satisfied for this Court to exercise jurisdiction over Plaintiff's fraud claim (*see* D.E. 7 at 11), the Court disagrees. The "effects" test is an alternative theory of personal jurisdiction. *See Isaacs v. Ariz. Bd. of Regents*, 608 F. App'x 70, 74 (3d Cir. 2015) ("A *separate* route to specific personal jurisdiction is available to victims of intentional torts; this is the 'effects test' stemming from [*Calder*].") (emphasis added); *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (The *Calder* test allows a "plaintiff [to] demonstrate a court's jurisdiction over a defendant even when the defendant's 'contacts with the forum alone . . . are far too small to comport with the requirements of due process' under [the] traditional analysis." (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998))). Satisfying the *Calder* test is therefore a sufficient, but not a necessary, condition for exercising specific jurisdiction.

[6] Because the Court finds that it has specific jurisdiction over the pending claims, the Court need not address whether general jurisdiction exists.

relief can be granted.

To state a common-law fraud claim in New Jersey, a plaintiff must plead (1) "a material misrepresentation by the defendant of a presently existing fact or past fact;" (2) "knowledge or belief by the defendant of its falsity;" (3) "an intent that the plaintiff rely on the statement;" (4) "reasonable reliance by the plaintiff;" and (5) "resulting damages to the plaintiff." *Marino v. Marino*, 200 A.2d 855, 871 (N.J. 2009) (quoting *Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1247 (N.J. 2006)). The plaintiff must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) by "stat[ing] with particularity the circumstances constituting fraud." Satisfying "Rule 9(b) 'requires [the] plaintiff[] to plead "the who, what, when, where, and how: the first paragraph of any newspaper story."'" *In re Cendant Corp. Sec. Litig.*, 76 F. Supp. 2d 531, 535 (D.N.J. 1999) (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), *as recognized in Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 276 (3d Cir. 2009)). But Rule 9(b) does not require the plaintiff to "plead the 'date, place or time' of the fraud" if she has "use[d] an 'alternative means of injecting precision and some measure of substantiation into [her] allegations of fraud.'" *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville Indus. Mach. v. Southmost Mach.*, 742 F.2d 786, 791 (3d Cir.1984)). Finally, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Defendant argues that Plaintiff's fraud claim is nothing more than an alleged failure to fulfill a promise, which may constitute a breach of contract but which is not actionable as fraud. (ECF No. 37-1 at 14-15.) Defendant also contends that "Plaintiff does not point to any specific misrepresentations allegedly made by Chef's Roll on which he supposedly relied" or connect the

alleged misrepresentations to a specific speaker, date, time, or place. (*Id.* at 15.) Accordingly, Defendant claims that Plaintiff has not met the heightened pleading standard of Rule 9(b). (*Id.*)

Plaintiff disagrees and contends that all the required elements for common-law fraud are contained in Paragraphs 51 to 57 of the Complaint. (ECF No. 38-3 at 27.) Plaintiff argues Paragraphs 12, 16, and 18 contain specific facts that form a basis for inferring fraudulent intent, namely that Defendant "indicated its intent to raise $1.5 million from investors, but did not do so." (*Id.* at 28.) In other words, Plaintiff argues that his averment "[t]hat [a] lower amount was actually raised suggests that the higher suggestion[, i.e. Defendant's stated intent to raise $1.5 million,] was made only for the purpose of inducing investment" and that Defendant knew or believed its stated intent to be false. (*Id.*) Plaintiff contends that Paragraph 30 of the Complaint specifies that Keslinke and van der Lee falsely stated that documents formalizing Plaintiff's equity in Chef's Roll would be issued soon. (*Id.*) Moreover, Plaintiff contends Paragraphs 51 to 53 provide additional detail on the fraudulent representations and indicate "that these representations were made to Malek as early as September 2, 2014." (*Id.*) For these reasons, Plaintiff argues his fraud claim satisfies Rule 9(b) and should not be dismissed under Rule 12(b)(6). (*See id.* at 27-28.)

The Court agrees with Defendant. Plaintiff's fraud claim falls short of being able to survive a motion to dismiss. First, the Court holds that the claim does not meet Rule 9(b)'s particularity requirements. For example, Paragraph 53 states, "These false representations included, but are not limited to, . . . representations as to Chef's Roll's present and future valuations, and representations as to the terms upon which Malek might be repaid for monies invested in Chef's Roll, including representations made as early as September 2, 2014." (ECF No. 1 ¶ 53.) Rule 9(b) requires a plaintiff to "plead 'who made the purported misrepresentations and what specific misrepresentations were made.'" *Del. Valley Bindery Inc. v. Ramshaw*, No. 17-00422, 2017 WL

4119597, at *7 (D.N.J. Sept. 18, 2017) (quoting *Pereira v. Azevedo*, No. 12-00907, 2013 WL 1655988, at *3 (D.N.J. Apr. 17, 2013)). Paragraph 53 does not state *what* specific misrepresentations were made regarding Chef's Roll's present and future valuations (*see* ECF No. 1 ¶ 53), nor does the remainder of the Complaint (*see* ECF No. 1). Similarly, the Complaint does not specify *what* Defendant misrepresented regarding the terms upon which Plaintiff might be repaid for his investment. (*See id.*) The Complaint does not specify *who* made the alleged misrepresentations regarding either Defendant's valuation or the terms of Plaintiff's repayment, as the Complaint vaguely states that "Chef's Roll, through Keslinke *and others*," made the misrepresentations. (*See id.* ¶ 50 (emphasis added).) Moreover, the Complaint does not specify *when, where, and how* the representations regarding Defendant's valuation and the terms of Plaintiff's repayment were made. (*See* ECF No. 1); *Cendant*, 76 F. Supp. 2d at 535; *see also USI Int'l, Inc. v. Festo Didactic, Inc.*, No. 15-08451, 2016 WL 4487858, at *3 (D.N.J. Aug. 24, 2016) (holding that alleged statements that "d[id] not identify the speaker or state where or when the statements were made" did not satisfy Rule 9(b)). The other paragraphs Plaintiff cites in support of meeting Rule 9(b)'s pleading standard suffer from similar deficiencies. (*See* ECF No. 38-3 at 28; ECF No. 1 ¶¶ 12, 16, 18, 20, 51, 52.) Consequently, Plaintiff's fraud claim does not "provide notice of the 'precise misconduct' with which [D]efendant[] [is] charged," and it does not satisfy Rule 9(b). *See Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 487 (D.N.J. 2018).

The Court also finds Plaintiff has not adequately pleaded the scienter element of common-law fraud. *See Marino*, 200 A.2d at 871. "[W]here a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud. . . ." *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1031 (D.N.J. 1995). But a plaintiff must allege facts sufficient for a court

to reasonably infer that knowledge of no intention to perform—she cannot plead the bare element and rest on Rule 9(b)'s language that state of mind may be alleged generally. *Iqbal*, 556 U.S. at 686-87; *see, e.g.*, *U.S., ex rel. Pilecki-Simko v. Chubb Inst.*, 443 F. App'x 754, 760-61 (3d Cir. 2011) (applying this principle in the False Claims Act context). And "[t]he intention of the promisor not to perform is not sufficiently established by mere proof of nonperformance." *Billings v. Am. Exp. Co.*, No. 10-03487, 2011 WL 5599648, at *11 (D.N.J. Nov. 16, 2011) (quoting *Ocean Cape Hotel Corp. v. Masefield Corp.*, 164 A.2d 607, 614 (N.J. Super. Ct. App. Div. 1960)); *accord Lo Bosco*, 891 F. Supp. at 1031.

Here, Plaintiff has not alleged facts sufficient for this Court to reasonably infer that Defendant knew or believed that its or its agents' statements to Plaintiff were false. *See Iqbal*, 556 U.S. at 686-87. The Complaint alleges that Keslinke told Plaintiff in July 2014 that Chef's Roll was targeting $1.5 million in its next investment round, but that after Plaintiff's investment Defendant "reconsidered its ambition . . . and instead decided to focus on raising two hundred fifty thousand dollars." (ECF No. 1 ¶¶ 12, 18.) These factual allegations do not, as Plaintiff argues, form a basis for this Court to infer fraudulent intent. (*See* ECF No. 38-3 at 28.) The factual allegations simply suggest (1) there was a change in external economic circumstances such that raising $1.5 million was no longer possible; (2) there was a change in internal circumstances such that raising $1.5 million was no longer necessary or otherwise did not comport with Defendant's goals; (3) Chef's Roll overestimated potential investor interest in its business and consequently had to reassess its fundraising goal; or (4) Defendant performs poorly in fundraising. (*See* ECF No. 1 ¶¶ 12, 18.) Regarding the alleged false representations by Keslinke and van der Lee that Plaintiff's stock would be forthcoming, the Court cannot find, and Plaintiff does not point to, any facts in the Complaint suggesting that these individuals knew or believed their representations to

be false. (*See* ECF No. 38-3.) As Defendant contends, the Complaint appears to rely on nonperformance of a promise as proof of fraudulent intent. (*See* ECF No. 1.) That is not enough. *See Billings*, 2011 WL 5599648, at *11.

Defendant's Motion to Dismiss Plaintiff's fraud claim (Count IV) is **GRANTED**. The Court will allow Plaintiff to amend his pleadings.

### C. Venue Under 28 U.S.C. § 1391(b)

Defendant also moves to dismiss under Federal Rule of Civil Procedure 12(b)(3) for improper venue. (ECF No. 37.) Neither party argues that venue would be proper in the District of New Jersey under 28 U.S.C. § 1391(b)(1) or 1391(b)(3). (*See* ECF Nos. 37-1, 38-3, 39.) The parties dispute whether proper venue lies in the District under 28 U.S.C. § 1391(b)(2). (*See* ECF No. 37-1 at 10-12; ECF No. 38-3 at 25-26; ECF No. 39 at 9-10.)

Section 1391(b)(2) states that venue is proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Substantiality "does not require that a majority of the events took place in the District, nor that the challenged forum be the best venue." *On-Time Staffing, LLC v. Flexible Staffing Sols., Inc.*, No. 06-03951, 2007 WL 1234978, at *6 (D.N.J. Apr. 25, 2017). Rather, the court need only "preserve the element of fairness [by ensuring] that a defendant is not haled into a remote district having no real relationship to the dispute." *Ragner Tech. Corp. v. Berardi*, 287 F. Supp. 3d 541, 556 (D.N.J. 2018) (quoting *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). Crucially, the Third Circuit has held that the "test for determining venue is . . . the location of those 'events or omissions giving rise to the claim.'" *Martino*, 36 F.3d at 294. The burden lies with a defendant to show improper venue. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 160 (3d Cir. 2012); *see also Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982).

Defendant contends that venue is not proper in the District because a substantial part of the events giving rise to Plaintiffs claims did not occur in New Jersey. (ECF No. 37-1 at 10-12.) Defendant argues that "[m]ost importantly, the alleged breach of the agreement that forms the basis of Plaintiff's Complaint—Chef's Roll's failure to issue stock and promote cutlery on the website—would have occurred in California." (*Id.* at 11-12.) Defendant also argues that it "did not enter New Jersey to discuss, negotiate, or execute any agreement" and that "Chef's Roll's communications with Plaintiff . . . originated from outside of New Jersey." (*Id.* at 11.)

Plaintiff counters that Defendant directed numerous communications to New Jersey and sought investment funds from New Jersey. (ECF No. 38-3 at 25.) Plaintiff contends that his performance under the contract occurred in New Jersey. (*Id.*) Plaintiff also contends that Defendant's omissions occurred in New Jersey. (*Id.*) Accordingly, Plaintiff argues that a substantial part of the events or omissions giving rise to his claim occurred in New Jersey, and therefore that venue is proper. (*Id.* at 25-26.)

The Court finds Defendant has not met its burden of showing that venue is improper in the District of New Jersey. *See Bockman*, 459 F. App'x at 160. "The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim,' theoretically a more easily demonstrable circumstance than where a 'claim arose.'" *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 522 (D.N.J. 2013) (quoting *Martino*, 36 F.3d at 294). Defendant's argument focuses on its contacts with New Jersey. (*See* ECF No. 37-1 at 10-12; ECF No. 39 at 9-10.) Indeed, Defendant does not address Plaintiff's contention that his performance under the alleged contract occurred in New Jersey and form a substantial part of the events giving rise to his breach-of-contract claim. (*See* ECF No. 39.) But Plaintiff alleges—and has provided evidence—that he fulfilled his contractual obligations to

Defendant by donating and shipping Gunter Wilhelm products from New Jersey, sending investment money from New Jersey, introducing Defendant to a New Jersey culinary professional, and having one of his New Jersey employees coordinate and pay for Defendant's flight to Atlantic City, New Jersey. (*See, e.g.*, ECF No. 1 ¶¶ 31-32; ECF No. 10-1 ¶ 7; ECF Nos. 10-11, 10-14, 10-20, 10-21, 10-23, 10-24.) The Court therefore finds the locations of a substantial number of events giving rise to Plaintiff's breach-of-contract claim were in New Jersey.[7] New Jersey has a "real relationship to the dispute," and fairness to Defendant is preserved in the Court holding venue proper in this District. *See Bockman*, 459 F. App'x at 161.

Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) is **DENIED**.

### D. Transfer Under 28 U.S.C. § 1404(a)

Having denied Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), the Court turns to Defendant's Alternative Motion to Transfer this action to the Southern District of California under 28 U.S.C. § 1404(a).

---

[7] *See Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 160 (3d Cir. 2018) ("Under New Jersey law, '[t]o state a claim for breach of contract, [a plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that **the party stating the claim performed its own contractual obligations**.'" (emphasis added) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007))).

The Court also notes that these same New Jersey events form a substantial part of the events giving rise to Plaintiff's unjust enrichment and quantum meruit claims. *See Hassler v. Sovereign Bank*, 374 F. App'x 341, 345 (3d Cir. 2010) ("[An unjust enrichment] claim requires proof that the defendant received a benefit and that retention of the benefit would be inequitable."); *Advanced Orthopedics & Sports Med. Inst. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-08848, 2018 WL 6603650, at *4 (D.N.J. Dec. 14, 2018) (A plaintiff stating a claim for quantum meruit in New Jersey must establish "(1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore; and (4) the reasonable value of the services." (quoting *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc. (Broad Street)*, No. 11-02775, 2012 WL 762498, at *8 (D.N.J. Mar. 6, 2012))).

Section 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In deciding a motion to transfer, the Court must first determine whether the alternative forum is a proper venue. *Fernandes v. Deutsche Bank Nat'l Trust Co.*, 157 F. Supp. 3d 383, 389 (D.N.J. 2015); *see* 28 U.S.C. § 1391. Venue is appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

When a plaintiff has laid a proper venue, "[t]he decision whether to transfer falls in the sound discretion of the trial court." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). However, "the burden of establishing the need for transfer . . . rests with the movant." *Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995).

The Court must consider three factors when determining whether to grant a transfer under Section 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Liggett Grp., Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000) (citing 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879). These factors are not exclusive and must be applied through a "flexible and individualized analysis . . . made on the unique facts presented in each case." *Id.* at 527 (citations omitted). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara*, 55 F.3d at 879-80.

The private interests a court should consider include: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (quoting *Jumara*, 55 F.3d at 879).

The public interests a court should consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* (citing *Jumara*, 55 F.3d at 879-80).

Here, Defendant argues that (1) Chef's Roll strongly prefers to litigate this dispute in the Southern District of California because Chef's Roll has no connection to New Jersey and litigating in this District would be highly inconvenient and costly; (2) Plaintiff's choice of forum should be given less weight because this lawsuit's central facts occurred outside of New Jersey; and (3) Plaintiff's claims "arose" in California. (ECF No. 37-1 at 13.)

Plaintiff does not dispute that venue would be proper in the Southern District of California. (*See* ECF No. 38-3 at 26-27.) However, Plaintiff argues that it would be equally, if not more costly, for him to litigate in that District. (*Id.* at 26.) Plaintiff further argues that considering the undisputed allegations that investment money flowed from him to Defendant, it would not be in the interests

of justice to place additional costs on him by transferring the case. (*Id.* at 26-27.) In reply, Defendant simply states, "For the convenience of witnesses and parties, Chef's Roll asks that the Court transfer this action to the Southern District of California under 28 U.S.C. § 1404(a)." (ECF No. 39 at 11.)

The Court denies Defendant's Alternative Motion to Transfer. The burden is on Defendant as the moving party to establish the need for transfer, and Defendant's three-paragraph argument has not shown that need. *See Jumara*, 55 F.3d at 879.

"In most cases, the plaintiff's forum choice is 'a paramount consideration in any determination of a transfer request,' and given great weight in a motion to transfer venue." *Park Inn Int'l*, 105 F. Supp. 2d at 377 (internal citation omitted). In support that its choice of forum should be given greater weight than Plaintiff's, Defendant argues "[a]s described in detail in the previous section, Plaintiff's claims have an attenuated connection to New Jersey." (ECF No. 37-1 at 13.) But for the reasons above why venue is proper in this District, the Court does not agree. Consequently, Defendant has not shown that its preference in forum deserves more weight, and the Court affords "great weight" to Plaintiff's forum choice. *See Park Inn Int'l*, 105 F. Supp. 2d at 377.

Regarding Defendant's argument that Plaintiff's claims "arose" in California, the Court finds this fact neutral. Where claims arose "may be best understood as a consideration of which forum constitutes the 'center of gravity' of the dispute, its events, and transactions." *Kane v. Ollie's Bargain Outlet Holdings, Inc.*, No. 18-03475, 2018 WL 6168085, at *4 (D.N.J. Nov. 26, 2018) (quoting *Travelodge Hotels, Inc. v. Perry Developers, Inc.*, No. 11-01464, 2011 WL 5869602, at *5 (D.N.J. Nov. 22, 2011)). "[T]he center of gravity analysis is a fact sensitive inquiry that seeks to identify the forum in which the operative facts giving rise to the litigation occurred." *Id.* (quoting

*Santomenno v. Transamerica Life Ins. Co.*, No. 11-00736, 2012 WL 1113615, at *7 (D.N.J. Mar. 30, 2012)). It is true, as Defendant argues, that Chef's Roll's failure to issue Plaintiff stock and promote Gunter Wilhelm on the Chef's Roll website would have occurred in California. (*See* ECF No. 37-1 at 13.) However, the alleged contract negotiations occurred in California and New Jersey, and perhaps elsewhere. (*See id.*; ECF No. 10-1.) Moreover, as explained above, the locations of a substantial number of events giving rise to Plaintiff's breach-of-contract claim were in New Jersey.

Finally, regarding the convenience of witnesses and parties, Defendant does not explain why litigating in New Jersey would be more inconvenient and costly for it relative to Plaintiff and witnesses. (*See* ECF No. 37-1 at 13.) The parties' filings indicate that Plaintiff and Gunter Wilhelm reside in New Jersey, Defendant and van der Lee reside in California, and Keslinke resides in Texas. (*See* ECF No. 1 at ¶¶ 2-5.) But without more information, the Court cannot properly assess this factor. The Court therefore finds it neutral.

The Court will not evaluate the various remaining public and private interests that the parties have not argued. *See Schneider's Dairy, Inc. v. Serv. Pers. & Employees of Dairy Indus., Teamsters Local Union No. 205*, No. 13-01325, 2013 WL 6485367, at *2 (W.D. Pa. Dec. 10, 2013) ("[I]t is not the Court's job 'to research and construct legal arguments open to parties, especially when they are represented by counsel.'" (quoting *330 West Hubbard Rest. Corp. v. U.S.*, 203 F.3d 990, 997 (7th Cir. 2000))). The Court simply holds that based on the factors the parties have argued, Defendant has not met its burden, because overall the factors fall in Plaintiff's favor.

Accordingly, Defendant's Alternative Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is **DENIED**.

**IV.    CONCLUSION**

For the reasons set forth above, Defendant's Renewed Motion to Dismiss is **GRANTED in part and DENIED in part** as set forth herein and in the accompanying Order.


**Date: August 15, 2019**                          */s/ Brian R. Martinotti*_____
                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**