## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DAVID MALEK,**

        **Plaintiff,**

v.

**CHEF'S ROLL, INC.,**

        **Defendant.**

**Case No. 18–cv–03205–BRM–ESK**

**OPINION**

**KIEL**, U.S.M.J.

    **THIS MATTER** is before me on plaintiff David Malek's motion for leave to file a second amended complaint (Motion). (ECF No. 83.) Defendant Chef's Roll, Inc. opposes the Motion. (ECF No. 85.) Malek filed a reply brief in further support of the Motion. (ECF No. 86.) For the following reasons, the Motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

    Chef's Roll operates an online community and website for culinary professionals and was founded by Thomas Keslinke and Frans van der Lee. (ECF No. 46 ¶¶ 3, 5.) Malek is the owner and chief executive officer of non-party Gunter Wilhelm Cutlery & Cookware (Gunter Wilhelm), a maker of professional grade cutlery and cookware. (*Id.* ¶ 2.) In 2013, Chef's Roll approached Malek with a "partnership opportunity." (*Id.* ¶ 8.) According to the first amended complaint, "it was agreed" that Malek would promote Chef's Roll in the culinary industry in exchange for an ownership interest in the company; Chef's Roll, in turn, would promote Gunter Wilhelm on Chef's Roll's website. (*Id.* ¶ 9.) When Malek's promotional efforts proved successful, Chef's Roll enlisted Malek to become a founding investor in Chef's Roll. (*Id.* ¶¶ 10–12.) Malek would make

investments in Chef's Roll, receive "Founders Stock," and sit on Chef's Roll's Board of Advisors.   (*Id.* ¶¶ 14–17, 19, 20.)

Malek continued to promote and grow Chef's Roll, but never received documents memorializing Chef's Roll's promises or the issuance of any shares.[1] (*Id.* ¶¶ 15, 18–23.)   At some point, Chef's Roll advised Malek it "would need to 're-evaluate' the actual value of what Malek had previously contributed by way of hotel and flight compensation to Chef's Roll," and a disagreement arose.   (*Id.* ¶ 21.)   In 2017, Malek learned that Chef's Roll ceased promoting Gunter Wilhelm and removed Gunter Wilhelm products from Chef's Roll's website, in violation of the parties' purported agreement.   (*Id.* ¶¶ 24, 25.)   Malek demanded from Chef's Roll $700,000 in compensation, or alternatively, the promised Founders Stock. (*Id.* ¶¶ 26, 27.)

## PROCEDURAL HISTORY

Malek filed the complaint on March 6, 2018.   (ECF No. 1.)   The complaint asserted four causes of action: breach of contract (count one); unjust enrichment (count two); quantum meruit (count three); and fraud (count four).   (*Id.* pp. 7–9.) Chef's Roll filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(2) on May 21, 2018.   (ECF No. 7.) Malek opposed (ECF No. 10), and Chef's Roll replied (ECF No. 11).   On July 11, 2018, former Chief Judge Jose L. Linares denied the motion without prejudice and instructed the parties to engage in jurisdictional discovery.   (ECF Nos. 13, 14.)

After the conclusion of jurisdictional discovery, Chef's Roll filed another motion to dismiss pursuant to Rule 12(b)(2), (3), and (6) on February 15, 2019. (ECF No. 37.)   Malek opposed (ECF No. 38), and Chef's Roll replied (ECF No.

---

[1] Chef's Roll appears to question the existence of any agreement with Malek, noting in opposition that no term sheet, offer letter, or written agreement with Malek was ever signed.   (ECF No. 85 pp. 7–9.)

39).   District Judge Brian R. Martinotti partially granted the motion to dismiss on August 16, 2019 and dismissed Malek's fraud claim without prejudice to re-plead that claim.   (ECF No. 44 p.22; ECF No. 45 p.2.)   However, the first amended complaint filed on September 16, 2019 asserted breach of contract, unjust enrichment, and quantum meruit without any fraud claim.[2]   (ECF No. 46 pp.7–9.)   Chef's Roll filed its answer to the first amended complaint on October 15, 2019.   (ECF No. 48.)

On October 29, 2019, Magistrate Judge Steven C. Mannion entered a scheduling order setting the deadline to seek leave to amend to January 24, 2020, (ECF No. 50 ¶14).   Fact discovery was briefly extended several times.   (Id. ¶2; ECF No. 60 ¶1; ECF No. 63.)   By supplemental scheduling order dated November 16, 2020, Judge Mannion afforded Malek leave to file an application for "late" amendment by December 4, 2020.   (ECF No. 80 ¶2.)   This matter was then reassigned to me on November 24, 2020.   (Docket entry after ECF No. 80.)

The present Motion was filed on December 4, 2020.   (ECF No. 83.)   Malek seeks leave to add causes of action for fraudulent inducement, fraudulent concealment, shareholder oppression, breach of fiduciary duty, and fraudulent transfer.   (ECF No. 83-1 p.5.)   Malek also seeks to add the co-founders of Chef's Roll, Thomas Keslinke and Frans van der Lee (Co-Founders), and asserts all proposed claims against them individually.[3]   (Id.; ECF No. 83-28 pp.15–28.)

---

[2] Malek's moving papers refer to the proposed amended pleading as the "Proposed First Amended Complaint."   (ECF No. 83-1 p.5; ECF No. 86 p.5.)   But Malek already filed the first amended complaint on September 16, 2019.   (ECF No. 46.)   Thus, Malek's proposed amended pleading (ECF No. 83-28) would constitute the second amended complaint.

[3] All new claims proposed by Malek are directed against the Co-Founders. However, portions of the breach of fiduciary duty claim (count seven) (ECF No. 83-27 ¶23), and fraudulent transfer claim (count eight) (id. ¶¶109, 113) also appear to be directed at Chef's Roll.   Malek's proposed pleading does not clearly specify whether the new claims are also being asserted against Chef's Roll.   Accordingly, and based on my examination of the new pleading—with the exception of the fraudulent inducement claim (count four)—all new claims shall be construed as against the Co-Founders only.

Malek argues the proposed claims are based on new discovery, particularly the Co-Founders' deposition testimony, and documents received from Chef's Roll's accountant in late October of 2020.   (ECF No. 83-1 p.5.)   Malek also attributes any delay in obtaining this discovery to Chef's Roll's "tactics."   (*Id.*)   Insofar as the Motion was filed after the deadline to amend in the scheduling order (ECF No. 50 ¶ 14), Malek submits he has shown good cause to consider the amendment under Rule 16 since, despite his diligence, he could not have sought to amend any earlier.   (ECF No. 83-1 pp.10–12.)   Malek also seeks leave to amend under Rule 15, since the amendment is not futile, would not prejudice Chef's Roll, and was not unduly delayed.   (*Id.* pp.12, 13.)   He also argues the amendment is not motivated by bad faith or dilatory motive.   (*Id.* p.12.)

In opposition, Chef's Roll disputes that Malek satisfies the "good cause" standard under Rule 16, as the deadline to amend lapsed, and fact discovery remains closed.   (ECF No. 85 p.6.)   It argues Malek's failure to bring the new claims sooner demonstrates a lack of diligence.   (*Id.* pp.15–17.)   Chef's Roll also claims it would be prejudiced by the amendment since the new claims would necessitate "re-opening" discovery.   (*Id.* pp.6, 16–18.)   Furthermore, it argues each of the proposed claims is futile because none would survive a motion to dismiss.   (*Id.* pp.6, 19–28.)   Chef's Roll notes that Malek's "real motive" to amend at this juncture is "to protect himself from the potential consequences of Chef's Roll's imminent bankruptcy."[4]   (*Id.* p.6.)   Chef's Roll's arguments in opposition are disputed in Malek's reply brief.   (ECF No. 86 pp.7–19.)

---

Furthermore, the fraudulent concealment, shareholder oppression, and breach of fiduciary duty claims against Chef's Roll could be futile, since the directors and officers of the corporation (and not the corporation itself) owe fiduciary duties to the stockholders. *See Francis v. United Jersey Bank*, 87 N.J. 15, 36 (1981).

[4] Chef's Roll has not, since the filing of its opposition, identified any bankruptcy or insolvency proceedings involving Chef's Roll.

## STANDARD OF REVIEW

Although a motion to amend is generally governed by Rule 15(a), a party who moves to amend a pleading "after a scheduling order deadline has passed must also meet Rule 16's 'good cause requirement.'" *Kuchinsky v. Pressler & Pressler, LLP*, No. 12-01903, 2014 WL 1679760, at *2 (D.N.J. Apr. 28, 2014) (citing *Dimensional Commc'ns, Inc. v. Oz Optics, Ltd.*, 148 F.App'x 82, 85 (3d Cir. 2005)).   Thus, after this deadline has elapsed, a motion for leave to amend is governed by both Rule 15 and Rule 16.   *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, No. 08-02177, 2012 WL 406905, at *3 (D.N.J. Feb. 7, 2012).

## I.   RULE 16 STANDARD

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). "The determination as to whether good cause exists depends on the diligence of the moving party." *Phillips v. Greben*, No. 04-05590, 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006).   Under some circumstances, good cause may be found based on a "mistake, excusable neglect or any other factor which might understandably account for the failure of counsel to undertake to comply with the Scheduling Order." *Id.*   Thus, to demonstrate good cause under Rule 16, the moving party must show that, despite its diligence, the scheduling order deadline could not reasonably be met.   *Dopico v. IMS Trading Corp.*, No. 14-01874, 2018 WL 623666, at *2 (D.N.J. Jan. 30, 2018) (citing *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F.Supp.2d 612, 618 (D. Del. 2008)).   The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend.   *See Dimensional Commc'ns*, 148 F.App'x at 85.   Therefore, a court may deny a motion to amend for lack of good cause if the moving party had "knowledge of [a] potential claim before the deadline to amend[]" expired. *Dopico*, 2018 WL 623666, at *2 (citing *Stallings v. IBM Corp.*, No. 08-03121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009)).

5

Nevertheless, a finding of good cause under Rule 16 remains appropriate where the moving party provides a "sufficient explanation of its diligence." *Harbor Laundry Sales, Inc. v. Mayflower Textile Servs. Co.*, No. 09-06259, 2011 WL 6303258, at *5 (D.N.J. Dec. 16, 2011). Moreover, the Rules "reject [] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept [] the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Physicians Healthsource, Inc. v. Advanced Data Sys. Int'l, LLC*, No. 16-03620, 2018 WL 3000175, at *3 (D.N.J. June 15, 2018) (citing *Foman v. Davis*, 371 U.S. 178, 181–82 (1962)). Ultimately, the court has "discretion in determining what kind of showing the moving party must make in order to satisfy Rule 16(b)'s good cause requirement." *Phillips*, 2006 WL 3069475, at *6.

## II.  RULE 15 STANDARD

Rule 15 "embodies a liberal approach to pleading." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006) (citation omitted). "The court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). "This standard encompasses a broad range of equitable factors." *Arthur*, 434 F.3d at 203 (citing *Foman*, 371 U.S. at 182). Under *Foman*, in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman*, 371 U.S. at 182). The grant or denial of leave to amend is a matter committed to the sound discretion of the court. *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). "The liberality of Rule 15(a) counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case." *Arthur*, 434 F.3d at 206 (citing *Foman*, 371 U.S. at 182). The court may also ground its decision "on consideration of additional equities, such as judicial economy/burden on the court and the prejudice denying leave to amend would cause to the plaintiff." *Mullin*

6

*v. Balicki*, 875 F.3d 140, 149–50 (3d Cir. 2017). "[T]he Third Circuit has 'made clear that there is to be a liberal use of Rule 15 to amend complaints so as to state additional causes of action.'" *In re L'Oreal Wrinkle Cream Mktg. Pracs. Litig.*, No. 12-03571, 2015 WL 5770202, at *3 (D.N.J. Sept. 30, 2015) (quoting *Leased Optical Dep't, Inc. v. Opti-Center, Inc.*, 120 F.R.D. 476, 479 (D.N.J. 1988)). The Third Circuit also recognizes the "strong liberality in allowing amendments under Rule 15 … to ensure that claims will be decided on the merits rather than on technicalities." *Clinton v. Jersey City Police Dep't.*, No. 07-05686, 2017 WL 1024274, at *2 (D.N.J. Mar. 16, 2017).

## LEGAL ANALYSIS AND DISCUSSION

### I.   ANALYSIS UNDER RULE 16

Malek provides a sufficient explanation of his diligence. Accordingly, good cause exists to relax the deadline to amend in the scheduling order. Initially, it bears repeating that "the purpose of pleading is to facilitate a proper decision on the merits." *Physicians Healthsource, Inc.*, 2018 WL 3000175, at *3 (citing *Foman*, 371 U.S. at 181–82).

This action commenced on March 6, 2018 (ECF No. 1), and, according to Chef's Roll, the parties have participated in fact discovery for about one year (ECF No. 85 p. 18). Malek did not obtain discovery pertaining to Chef's Roll's revenues, profitability, and Co-Founder salaries until July 20, 2020, about six months after the deadline to amend in the scheduling order. (ECF No. 86 p. 8.) As the fact discovery deadline of October 30, 2020 approached (ECF No. 63), Malek obtained additional discovery, including the Co-Founders' testimony, and documents subpoenaed from Chef's Roll's accountant. (ECF No. 83-1 pp. 5–6.) Malek believes the new discovery supports his new claims, and the discovery could not have been obtained before the scheduling order deadline. (*Id.* pp. 6, 8, 9, 10, 13.) Accordingly, good cause exists to consider the amendment. *See Titus v. Borough of Maywood*, No. 14-02007, 2016 WL 7477759, at *2 (D.N.J. Dec. 29,

2016) (finding "good cause" for late amendment at "late stage" of litigation where proposed claims supported by new documents produced after deadline to amend).

Malek continued to act diligently once the new discovery was in hand. After the Co-Founders were deposed, the subpoenaed documents were obtained, and this new discovery was considered, Malek raised the matter of amending his pleadings at a status conference with Judge Mannion on November 16, 2020. (ECF No. 80.)   The Motion for "late" amendment was permitted, and timely filed. (ECF No. 83.)

## II.   ANALYSIS UNDER RULE 15

The next question is whether leave to amend should be granted under Rule 15.   *Titus*, 2016 WL 7477759, at *1.   In the absence of undue delay, unfair prejudice, bad faith, dilatory motive, or futility of amendment, the court must grant the request for leave to amend.   *Foman*, 371 U.S. at 182.

### A.   Undue Delay and Unfair Prejudice

I find no undue delay.   "[D]elay alone is an insufficient ground to deny leave to amend."   *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).   "[T]he question of undue delay requires that we focus on the movant's reasons for not amending sooner."   *Id.*   However, at some point, delay becomes undue, placing an unwarranted burden on the court, and an unfair burden on the opposing party.   *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).   As set forth above, Malek obtained new discovery between July and October of 2020, when the Co-Founders' depositions proceeded.   He sought to amend by seeking Chef's Roll's consent on October 8, 2020 (ECF No. 86 p.8), and permission to file the Motion at the status conference on November 16, 2020 (ECF No. 80).   The Motion followed.   (ECF No. 83.)   Any delay here was not undue.

Of course, where "the delay unduly prejudices the non-moving party[,]" delay may be a sufficient basis to deny an amendment.   *Cornell & Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) (citation omitted).   The "touchstone" for the denial of an amendment is prejudice.

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330–31 (1971). Consequently, "[u]nfair prejudice is usually found when there has been a significant unjustified delay in moving to amend that creates an unfair disadvantage for the defendant." *In re Merck*, 2012 WL 406905, at *2. Courts also evaluate prejudice by examining whether the amendment would require the non-moving party to expend significant, additional resources, or would significantly delay the resolution of the dispute. *See Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). On the other hand, incidental prejudice, without more, will not support a denial of leave to amend. *See In re Caterpillar, Inc.*, 67 F.Supp.3d 663, 668 (D.N.J. 2014).

I find no unfair prejudice to Chef's Roll. Chef's Roll claims that it "will have to gather additional evidence to refute [Malek's] new theory" along with allegations premised on Malek's status as a shareholder of Chef's Roll. (ECF No. 85 p. 17.) As a preliminary matter, most of Malek's new claims are directed against the Co-Founders individually, not against Chef's Roll. Also, merely that some additional discovery may result from an amendment is insufficient to establish the sort of prejudice necessary to deny the Motion. *See Evonik Degussa GMBH v. Materia Inc.*, No. 09-00636, 2011 WL 13152274, at *6 (D.N.J. Dec. 13, 2011) (citation omitted). I recognize that, to the extent Malek's proposed amendment is allowed, discovery will need to be re-opened. *See Stallings*, 2009 WL 2905471, at *17 (finding that prejudice may result where amendment will require re-opening of discovery, would delay resolution of matter, or would unnecessarily increase litigation costs). But as noted in Chef's Roll's opposition, "[t]he parties have engaged in discovery for approximately a year[.]" (ECF No. 85 p. 18.) Further, Malek and the Co-Founders have already been deposed. (ECF No. 83-1 p. 5; ECF No. 86 p. 10.) Given the status of discovery, any delay occasioned by additional discovery necessitated by the new claims outweighs any incidental prejudice to Chef's Roll for having to participate in such discovery. Conversely, Malek could suffer undue prejudice if the proposed claims are not

9

permitted. *Mullin*, 875 F.3d at 149–50 (allowing courts to consider "additional equities," including prejudice to the plaintiff if leave to amend were denied). As the Third Circuit has expressed a "strong liberality in allowing amendments under Rule 15" in order "to ensure that claims will be decided on the merits[,]" *Clinton*, 2017 WL 1024274, at *2, the amendment will be permitted here.

### B.   Bad Faith and Dilatory Motive

I find no dilatory motive. "The question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiffs' motives for not amending their complaint to assert th[e] claim[s] earlier[.]" *Adams*, 739 F.2d at 868. Chef's Roll argues that, while Malek was "well-positioned" to seek leave to amend by July 20, 2020 based on information then available to him, he failed to pursue the amendment and fails to explain his "dilatory behavior[.]" (ECF No. 85 p.6.) First, the parties evidently agree that Malek could not have sought amendment prior to July of 2020, when Malek had obtained some (but not all) of the new discovery pertaining to Chef's Roll's revenues, profitability, and Co-Founder salaries. (*Id.*; ECF No. 86 p.5.) Second, Malek obtained additional, new discovery in the form of testimony and subpoenaed documents in October of 2020. Between October and November of 2020, Malek promptly commenced the process for amending his pleading. Nothing about the procedural posture or history of this matter indicates that Malek is seeking to protract this case. Rather, Malek obtained discovery that purports to give rise to new claims against new parties (all new counts proposed), along with a new theory of liability as to Chef's Roll (fraudulent inducement). I find no dilatory motive here.[5]

### C.   Futility of Amendment

I find that—with the exception of any discernible proposed claim for fraudulent concealment *of evidence* (to the extent it is alleged)—Malek's proposed claims against the Co-Founders are not "clearly futile." *See Harrison Beverage*

---

[5] Chef's Roll does not argue that the proposed amendment was motivated by bad faith. (ECF No. 85.)

*Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).   Courts determine futility "by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff."   *Winer Fam. Tr. v. Queen¸*503 F.3d 319, 330–31 (3d Cir. 2007) (citation omitted).

"An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"   *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).   "If a proposed amendment is not clearly futile, then denial of leave to amend is improper."   *Harrison Beverage*, 133 F.R.D. at 468.   "A court will consider an amendment futile if it 'is frivolous or advances a claim or defense that is legally insufficient on its face.'"   *Jemas v. CitiMortgage, Inc.*, No. 12-03807, 2013 WL 1314729, at *4 (D.N.J. Mar. 28, 2013) (quoting *Harrison Beverag*e, 133 F.R.D. at 468).   In determining whether an amendment is "insufficient on its face," the court considers the Rule 12(b)(6) motion to dismiss standard.   *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

### i.   Fraudulent Inducement

Malek's proposed claim for fraudulent inducement is not clearly futile.[6]   "In order to establish a claim for fraudulent inducement, five elements must be shown: (1) a material misrepresentation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment."   *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F.Supp.2d 436, 451 (D.N.J. 2012) (citing *Metex Mfg. Corp. v. Manson*, No. 05-02948, 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008)).

The proposed second amended complaint alleges Chef's Roll, "through Keslinke and others," made material misrepresentations to Malek, including

---

[6] Malek occasionally conflates a fraudulent inducement claim with a fraudulent concealment claim in briefing.   (ECF No. 83-1 p. 14.)

11

Chef's Roll's promises to issue stock to Malek and to promote Gunter Wilhelm products exclusively on Chef's Roll's website (in exchange for Malek's investments in Chef's Roll and other commitments).   (ECF No. 83-27 p. 15.)   It alleges these promises were made to Malek in e-mails dated August 6, 2014 and November 16, 2015, among "other" e-mails and "many" conversations.   (*Id.*)   It further alleges that the Co-Founders knew their representations to Malek were false, and never intended to honor their promises.   (*Id.* pp. 16, 18.)   It pleads the elements of reliance, inducement, and damages.   (*Id.* pp. 18, 19.)

In opposition, Chef's Roll notes that Judge Martinotti dismissed Malek's common-law fraud claim because the original complaint did not allege facts "suggesting that [the Co-Founders] knew or believed their representation to be false."   (ECF No. 44 p. 21.)   Judge Martinotti also found that the complaint's reliance on nonperformance of a promise as proof of fraudulent intent, without more, was inadequate.   (Id. p. 22.)   However, Judge Martinotti did afford Malek an opportunity to correct these deficiencies.   (ECF No. 45.)   Moreover, the fraudulent inducement claim is now supported by additional, fact allegations that render the proposed claim for fraudulent inducement "not clearly futile."   (ECF No. 83-27 pp. 15–19.)

In addition, Chef's Roll argues that the fraudulent inducement claim is barred by the economic loss doctrine.   (ECF No. 85 p. 21.)   "The economic loss doctrine prohibits the recovery in a tort action of economic losses arising out of a breach of contract."   *Sun Chem. Corp. v. Fike Corp.*, 243 N.J. 319, 328 n. 2 (2020) (citing *Dean v. Barrett Homes, Inc.*, 204 N.J. 286, 296–97 (2010)).   However, "[t]he distinction between fraud in the inducement and fraud in the performance of a contract remains relevant to the application of the economic loss doctrine in New Jersey."   *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F.Supp.2d 557, 563 (D.N.J. 2002).

"The 'critical issue' with regard to economic loss 'is whether the allegedly tortious conduct is extraneous to the contract.'"   *Id.* at 564 (quoting *Emerson*

12

*Radio Corp. v. Orion Sales, Inc.*, No. 95-06455, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000)). "An alleged misrepresentation is extraneous to an agreement when it breaches a duty 'separate and distinct from the performance' of the agreement's terms." *Id.* (citing *Chen v. HD Dimension, Corp.*, No. 10-00863, 2010 WL 4721514, at *6 (D.N.J. Nov. 15, 2010)). In analyzing whether a misrepresentation is extraneous, courts must compare the misrepresentations with the specific contractual language at issue. *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-02867, 2012 WL 3647427, at *6 (D.N.J. Aug. 23, 2012).

Based on the foregoing authority, the economic loss doctrine does not bar Malek's proposed fraudulent inducement claim. The parties have not cited to any terms of a final or written agreement for my consideration. Chef's Roll disputes the existence of a formal agreement with Malek at all. (ECF No. 83-1 p. 14; ECF No. 85 pp. 7–11.) I cannot compare Chef's Roll's or the Co-Founders' alleged fraudulent promises against contract terms that have not been presented to me. Thus, without the benefit of examining the terms of the agreement, if any, between the parties, I have no basis to conclude that the economic loss doctrine bars Malek's proposed claim for fraudulent inducement. The claim is not clearly futile.

### ii.    Fraudulent Concealment [7]

Malek's proposed claim for fraudulent concealment is not clearly futile. "To allege fraudulent concealment, a plaintiff must plead with particularity five

---

[7] Chef's Roll lacks standing to challenge, on futility grounds, the remaining new claims directed against the Co-Founders. "[C]urrent parties 'unaffected by [the] proposed amendment' do not have standing to assert claims of futility on behalf of proposed defendants." *Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, No. 13-05592, 2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014) (quoting *Clark v. Hamilton Mortg. Co.*, No. 07-00252, 2008 WL 919612, at *2 (W.D. Mich. Apr. 2, 2008)). Thus, Chef's Roll does not have standing to argue, on behalf of the Co-Founders, that Malek's proposed claims for fraudulent concealment, shareholder oppression, breach of fiduciary duty, and fraudulent transfer against the Co-Founders are futile. Nevertheless, since the parties have raised the matter in briefing, I will address the futility factor under *Foman*.

elements: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Delany v. Am. Express Co.,* No. 06-05134, 2007 WL 1420766, at *5 (D.N.J. May 11, 2007) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).   The existence of a duty to disclose based on a special relationship distinguishes a fraudulent concealment claim from a fraudulent inducement claim.   *See Argabright v. Rheem Mfg. Co.*, 15-05243, 258 F.Supp.3d 470, 489 (2017) (citing *Lightning Lube, Inc. v Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993)). "Such a duty [to disclose] arises when there is a fiduciary relationship between the parties, when one party expressly reposits trust in another party (or such trust is necessarily implied from the circumstances), or when the relationship between the parties is so intrinsically fiduciary that a degree of trust is required to protect the parties[.]"   *Id.* (citing *Lightning Lube*, 4 F.3d at 1185).

In opposition, Chef's Roll challenges the proposed fraudulent concealment claim by noting that Malek "is not a shareholder of Chef's Roll."   (ECF No. 85 p.23.)   Chef's Roll argues, in essence, that no special relationship between Malek and the Co-Founders exists, and the fraudulent concealment claim is therefore futile.   However, as discussed, *infra*, Malek appears to qualify as a "shareholder" under the New Jersey Business Corporation Act, N.J.S.A. 14A:1-1, *et seq.* (BCA). Accordingly, the Co-Founders, as officers and directors of Chef's Roll, would owe a fiduciary duty, or duties, to Malek as a shareholder.   Moreover, although the phrase "special relationship" is not used in the proposed pleading, such a relationship may be implied based on the new pleading's allegations. *Argabright*, 258 F.Supp.3d at 489 (citation omitted).

Here, Malek claims to have contributed to the early success and burgeoning growth of Chef's Roll.   (ECF No. 83-27 ¶¶ 49, 53.)   He was enlisted as "a founding investor in Chef's Roll" (*id.* ¶ 18), and "gave [Chef's Roll] life [by

providing] cash, promotion[al] [services], and other … investments during [Chef's Roll's] infancy."   (*Id.* ¶ 3.)   Malek alleges, however, that the promised Founders Stock and Chef's Roll shares were never issued to him, despite his services and investments in the company.   Importantly, "[t]he relation of joint adventurers, like that of co-partners, is fiduciary, one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits."   *Silverstein v. Last*, 156 N.J. Super. 145, 152 (App. Div. 1978) (quoting *Bowne v. Windsor*, 106 N.J. Eq. 415, 416 (Ch. Div. 1930)).   Under these circumstances, the trust Malek reposited in the Co-Founders could support a cognizable fiduciary relationship such that the fraudulent concealment claim is not clearly futile.

Chef's Roll also claims that the proposed claim fails to satisfy Rule 9(b) since the claim does not provide "any factual predicate" supporting each element of the claim, is devoid of any reference to specific purported misrepresentations by the Co-Founders, and fails to specify the Co-Founders' respective misconduct with any precision.   (ECF No. 85 p.25.)   Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   Fed.R.Civ.P. 9(b).   "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   *Id.*

Contrary to Chef's Roll's position, Malek specifically incorporates new allegations with regard to the proposed claim for fraudulent concealment (count five).   (ECF No. 83-27 ¶ 80.)   As such, I disagree with Chef's Roll's contention that the proposed fraudulent concealment claim violates Rule 9(b).   This iteration of Malek's pleading does contain fact allegations "suggesting that [the Co-Founders] knew or believed their representation[s] [and promises] to be false[,]" which Judge Martinotti found lacking in Malek's original complaint. (ECF No. 44 p.21.)   The claim is not clearly futile.

By contrast, I find that, if Malek is seeking to assert a claim for fraudulent concealment *of evidence* (to the extent such a claim can be gleaned from the proposed pleading), such a claim would be clearly futile.   The elements of a

fraudulent concealment of evidence claim are: "(1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation; (2) That the evidence was material to the litigation; (3) That plaintiff could not reasonably have obtained access to the evidence from another source; (4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation; and (5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed." *Huzinec v. Six Flags Great Adventure, LLC*, No 16-02754, 2017 WL 44850, at *6 (D.N.J. Jan. 3. 2017) (citing *Rosenblit v. Zimmerman*, 166 N.J. 391, 406–07 (2001)).

The new pleading alleges facts which satisfy some, but not all, of the elements of a fraudulent concealment of evidence claim:

> This pattern of fraud and deception has continued through this litigation, as [the Co-Founders] instructed their attorneys to stall and hinder Malek's lawful attempts to prosecute this action and to obtain financial information about Chef's Roll, including by contesting personal jurisdiction, [and] objecting to basic discovery regarding the financial condition of the company, …

(ECF No. 83-27 ¶ 71.)

While the new pleading refers to pending litigation (*i.e.*, this lawsuit), there are no allegations that Malek was damaged in this matter by having to "rely on an evidential record that did not contain the evidence defendant concealed." *Huzinec*, 2017 WL 44850, at *6 (citation omitted).   Malek also fails to plead that he "could not reasonably have obtained access to the evidence from another source[.]"   *Id.*   Accordingly, even though Malek in briefing recites the elements of a fraudulent concealment *of evidence* claim (ECF No. 83-1 p.17), an examination of the proposed complaint reveals that Malek intends to proceed

with a fraudulent concealment claim (for which leave will be granted), not a fraudulent concealment of evidence claim (for which leave will be denied).

With regard to Chef's Roll's economic loss doctrine argument as to count five, again, I do not have any final agreement before me, and Chef's Roll disputes that such an agreement exists. Thus, Chef's Roll's argument that "the fraudulent concealment claim [is] intrinsic to the contractual claim, [and] the two claims are virtually identical," is rejected. (ECF No. 85 p.22.) As with the fraudulent inducement claim, I cannot find that the economic loss doctrine bars Malek's proposed claim for fraudulent concealment.

### iii.    Shareholder Oppression

Malek's proposed claim for shareholder oppression is not clearly futile. Oppressed shareholders may seek redress under the BCA. The BCA provides that, in a corporation of twenty-five or fewer shareholders, a court may take remedial action where "the directors or those in control have … mismanaged the corporation, or abused their authority as officers or directors or have acted oppressively or unfairly toward [a] minority shareholder[] in their capacities as shareholders, directors, officers or employees." N.J.S.A. 14A:12-7(1)(c). "[T]he label worn by those accused of oppression—whether stockholders, directors or officers—is not critical … [t]he question is whether the[] [oppressors] have the power to work their will on others—and whether have done so improperly." *Bonavita v. Corbo*, 300 N.J. Super. 179, 188 (Ch. Div. 1996).

"Ordinarily, oppression … is clearly shown when the[] [oppressing shareholders] have awarded themselves excessive compensation, furnished inadequate dividends, or misapplied and wasted corporate funds." *Muellenberg v. Bikon Corp.*, 143 N.J. 168, 180 (1996). The BCA recognizes "the uniquely disadvantageous position a minority shareholder occupies in a close corporation." *Tutunikov v. Markov*, No. A-1827-10T3, 2013 WL 3940889, at *7 (N.J. App. Div. Aug. 1, 2013). Oppression "has been defined as frustrating a shareholder's

reasonable expectations" and "is usually directed at a minority shareholder personally[.]" *Brenner v. Berkowitz*, 134 N.J. 488, 506 (1993).

In opposition, Chef's Roll argues that Malek fails to plead facts demonstrating that Malek is a Chef's Roll shareholder. (ECF No. 85 p.23.) It argues that Malek does not meet the dictionary-definition of "shareholder" since Malek alleges he never received the promised stock. (*Id.* p.24.) Absent any formal contract confirming Malek's stock ownership, Chef's Roll argues, Malek "cannot be a shareholder in Chef's Roll." (*Id.*) Further, since the BCA defines "shareholder" as "a holder of record of shares," if Malek never received the shares, he was never a "holder of record," and so does not qualify as a shareholder. (*Id.* pp.23, 24.) In response, Malek contends that, under New Jersey law, "where a promise to confer shares in a corporation is breached, the party entitled to the shares is also entitled to assert claims that it could have asserted if the shares had been issued as promised." (ECF No. 86 p.6.)

Chef's Roll correctly notes that the BCA defines "shareholder" as "one who is a holder of record of shares in a corporation." N.J.S.A. 14A:1-2.1(l). However, the BCA qualifies all of its definitions with: "unless the context otherwise requires[.]" N.J.S.A. 14A:1-2.1. Moreover, and significantly, "[w]hen payment of the full consideration for which shares are to be issued is made, the subscriber shall thereupon become entitled to all the rights and privileges of a holder of such shares, … and such shares shall be fully paid and nonassessable." N.J.S.A. 14A:7-5(2).[8]  "The consideration to be paid for shares may be paid in (i) money, (ii) real property, (iii) tangible or intangible personal property, … or (iv) labor or services rendered or to be rendered to the corporation." 49 N.J. Practice: Business Law Deskbook, § 2:29 (2020–21 ed.) (citing N.J.S.A. 14A:7-5(1)).  "With

---

[8] Chef's Roll opposition draws attention to dictionary definitions, yet does not address this provision of the BCA, or the qualifying language under the "definitions" section of the BCA.

respect to the promise of future services as consideration, in determining the fairness of the value of such consideration, one of the factors that the board or shareholders should consider is whether the obligation is evidenced by a contract and the enforceability of the promise." *Id.* (citing N.J.S.A. 14A:7-5 [Commissioners' Comment-1988 Amendments]).   In addition, "the question of whether one is a minority shareholder should not 'be determined through a mechanistic count of stock ownership percentage[.]'" *Bonavita*, 300 N.J. Super. at 188 (quoting *Berger v. Berger*, 249 N.J. Super. 305, 315 (Ch. Civ. 1991)).

Here, Malek alleges he paid substantial consideration to Chef's Roll in the form of cash investments and promotional services in exchange for Founders Stock and Chef's Roll shares.   As such, Malek would qualify as a shareholder under the BCA, entitling him to all "rights and privileges" of a holder of record of shares.   N.J.S.A. 14A:7-5(2).   Accordingly, his proposed claim for shareholder oppression is not clearly futile.

Under Chef's Roll's interpretation of "shareholder," oppressors could accept full consideration in exchange for promised shares, never issue the shares, and remain insulated from liability under the BCA.   New Jersey courts have dispensed with "labels" and mechanistic applications in favor of a "qualitative evaluation" to further the policy underlying the BCA, which is to "prevent abuse and oppression by those in control of a closely-held corporation upon those with inferior interests."   *Bonavita*, 300 N.J. Super. at 188 (citing to N.J.S.A. 14A:12-7) (internal quotations omitted).   Chef's Roll's proffer to apply the dictionary-definition over the BCA-definition of "shareholder" is rejected.

### iv.   Breach of Fiduciary Duty

Malek's proposed claim for breach of fiduciary duty is not clearly futile.   "A breach of fiduciary duty, like professional negligence, is a theory in tort." *Cantillo v. Fraenkel*, No. A-0094-15T4, 2016 WL 7335811, at *4 (N.J. App. Div. Dec. 19, 2016) (citing *In re Estate of Lash*, 169 N.J. 20, 27 (2001)).   "A fiduciary who commits a breach of his duty as a fiduciary is guilty of tortious conduct to the

person for whom he should act." *Restatement (Second) of Torts* § 874 (1979). The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care. *Restatement (Second) of Trusts* §§ 170, 174 (1959). Accordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship. *Restatement (Second) of Torts* § 874 (1979).

"Under New Jersey law, a fiduciary relationship exists when one party is 'under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship.'" *Miller v. Butler*, No. 12-01004, 2014 WL 1716184, at *3 (D.N.J. Apr. 30, 2014) (quoting *F.G. v. MacDonnell*, 150 N.J. 550, 563 (1997)). Of particular significance to this lawsuit, "[t]he relation of joint adventurers, like that of co-partners, is fiduciary, one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits." *Silverstein*, 156 N.J. Super. at 152 (quoting *Bowne*, 106 N.J. Eq. at 416).

Chef's Roll's opposition characterizes Malek's breach of fiduciary duty claim as a mere derivative action, and thereby attempts to contort and limit the claim. (ECF No. 85 pp. 25, 26.) First, fiduciary relationships exist outside the director-shareholder context. *See Aden v. Fortsh*, 169 N.J. 64, 78–79 (2001) (recognizing insurance agents and brokers as fiduciaries). Here, it is not disputed that Malek and the Co-Founders were partners, mutually promoting the growth of both Chef's Roll and Gunter Wilhelm. This relationship may be fiduciary in nature. *See Silverstein*, 156 N.J. Super. at 152 (fiduciary relationship exists between "joint adventurers, like that of co-partners").

Furthermore, Malek has brought claims sounding in contract and fraud that are independent of his status as a shareholder of Chef's Roll. Thus, Chef's Roll's argument that Malek "does not assert any facts demonstrating that the harms were unique to him" is rejected. There are permissible grounds for individual claims here. *Compare Pullman-Peabody, Co. v. Joy Mfg. Co.*, 662 F.Supp. 32, 35 (D.N.J. 1986) (rejecting direct claims since there was "no cognizable assertion of

violation of a contract right of Plaintiffs or of injury to them independent of their being stockholders of the corporation").   Malek's direct claims as a shareholder of Chef's Roll and as an investing partner with the Co-Founders, based on alleged breaches of fiduciary duties, are not clearly futile.

To the extent Malek's new pleading asserts derivative claims, those claims—while potentially problematic—are, at this juncture, not clearly futile.   As previously discussed, Malek may qualify as a shareholder under the BCA.   "A shareholder derivative action is a unique and anomalous legal remedy."   *Kamen v. Kemper Fin. Servs., Inc.* 500 U.S. 90, 95 (1991).   "The purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers."   *Id.*   Under Rule 23.1, "a shareholder may file a derivative suit against the board of directors to claim enforcement of a right of the corporation where the corporation has failed to assert that right."   *Kanter v. Barella*, 489 F.3d 170, 176 n.5 (3d Cir. 2007).   A derivative action typically requires the plaintiff to make pre-suit demand on the board (that is, for the board to bring suit on behalf of the corporation).   *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992).

"The substantive requirements of demand are a matter of state law."   *Freedman v. Redstone*, 753 F.3d 416, 423 (3d Cir. 2014).   Under the BCA, a shareholder may commence or maintain a derivative proceeding so long as the shareholder: "(1) was a shareholder of the corporation at the time of the act or omission complained of … ; and (2) fairly and adequately represents the interests of the corporation in enforcing the right of the corporation."   N.J.S.A. 14A:3-6.2. In New Jersey, written demand is a categorial prerequisite to a derivative action without exception.   *See Hirschfeld v. Beckerle*, 405 F.Supp.3d 601, 608 (D.N.J. 2019) (N.J.S.A. 14A:3-6.3 as amended is "clear on its face that, in a derivative action, pre-suit demand is mandatory in all circumstances").   However, the BCA "was amended so as to apply the shareholder derivative provisions automatically,

making the provisions applicable *unless* the corporation indicated otherwise in its certificate of incorporation."   *Id.* at 607 (emphasis in original).

While Malek's new pleading discusses the futility of a demand, it omits any factual allegation concerning whether a pre-suit demand was made upon Chef's Roll in writing.   The proposed new pleading does not reference or discuss Chef's Roll's certificate of incorporation, which has not been presented to me for consideration.   The terms of the certificate could resolve the question of whether N.J.S.A. 14A:3-6.3 has any applicability here.   On the other hand, Chef's Roll in opposition does not challenge Malek's proposed derivative claim as *Foman*-futile on N.J.S.A. 14A:3-6.3 grounds.   Ultimately, since Chef's Roll's certificate of incorporation is not before me, I cannot find that Malek's proposed derivative action is clearly futile.

### v.   **Fraudulent Transfer**

Malek's proposed claim for fraudulent transfer is not clearly futile.   "Two elements must be pled with sufficient particularity to plausibly allege a claim under [New Jersey's Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20, *et seq.* (UFTA)]: (1) whether the debtor has put some asset beyond the reach of creditors which would have been available to the creditors at some point in time but for the conveyance; and (2) whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor."   *Burt v. Key Trading LLC*, No 12-06333, 2014 WL 5437070, at *4 (D.N.J. Oct. 22, 2014) (citing *MSKP Oak Grove, LLC v. Venuto*, 875 F.Supp.2d 426, 435 (D.N.J. 2012)).

Chef's Roll contends that Malek "fails to plead any facts demonstrating that the alleged payments had put some asset beyond [Malek's] reach and those assets would have been available to him at some point in time but for the conveyance." (ECF No. 85 p.28.)   It also argues that the new pleading fails to plead intent on the part of the Co-Founders to defraud, delay, or hinder.   (*Id.*)   Rule 9(b) applies to fraudulent transfer claims under the UFTA.   *MSKP Oak Grove*, 875 F.Supp.2d at 434.   "To satisfy this standard, the plaintiff must plead or allege

the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 504 F.3d 188, 200 (3d Cir. 2007) (citation omitted).

Malek's proposed fraudulent transfer claim, while at times imprecisely pleaded, is not "clearly futile." The new complaint identifies Malek as a "creditor" owed debts by Chef's Roll. (ECF No. 83-27 ¶ 109). It alleges the Co-Founders diverted assets from Chef's Roll to themselves, family members, and other companies in which the Co-Founders hold interests. (*Id.* ¶¶ 108, 110, 111.) These allegations underpin the first element of Malek's UFTA claim. In addition, the new complaint claims the Co-Founders were "aware" of their debts to Malek, yet made the transfers "intentionally." (*Id.*) The proposed fraudulent transfer claim (count eight) also incorporates all preceding allegations of fraud and fraudulent intent by reference. (*Id.* ¶ 106.)

Furthermore, Malek points out that a number of allegedly fraudulent transfers were identified in Chef's Roll's general ledgers from 2016 through 2020, which were only received by Malek in mid-October of 2020.(ECF No. 86 p.15.) As such, Malek was not in possession of all documents relevant to his proposed fraudulent transfer claim when he commenced this case or during the original period to amend. Importantly, "[i]n spite of Rule 9(b)'s heightened requirements … courts should be conscious of the fact that application of these more stringent pleading standards may allow 'sophisticated defrauders' to 'successfully conceal the details of their fraud.'" *MSKP Oak Grove*, 875 F.Supp.2d at 434 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)). "In situations where the required factual material 'is peculiarly within the defendant's knowledge or control, the rigid requirements of 9(b) may be relaxed." *Id.*

Chef's Roll points out that the new complaint "fails to specify the date and time of the alleged fraudulent transfer, the amounts of the transfer, [or] the [recipients of] the transfer[.]" (ECF No. 85 p.27.) But Chef's Roll ignores the

23

fact that Malek only obtained documents containing such information in October of 2020, after Malek had already commenced the process to amend his pleading. And since Rule 9(b)'s normally stringent requirements should be relaxed under the circumstances presented here, Malek's proposed fraudulent transfer claim is not clearly futile and survives Chef's Roll's opposition to the Motion.

Moreover, with a UFTA claim, "[c]ourts look to the presence of factors enumerated in" N.J.S.A. 25:2-26, "*a.k.a.* the 'badges of fraud,' to determine if the 'intent' element for a fraudulent conveyance claim has been sufficiently pled." *Burt*, 2014 WL 5437070, at *5 (citing *MSKP Oak Grove*, 875 F.Supp.2d at 435). "These badges of fraud 'represent circumstances that so frequently accompany fraudulent transfers that their presence gives rise to an inference of intent.'" *Pompeo v. Est. of Hudson*, No. 11-06899, 2013 WL 2182304, at *4 (D.N.J. May 20, 2013). "[I]n determining actual intent under the [UFTA]" courts may consider, "among other factors," whether:

> (1) The transfer or obligation was to an insider;[9]
>
> (2) The debtor retained possession or control of the property transferred after the transfer;
>
> (3) The transfer or obligation was disclosed or concealed;
>
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) The transfer was of substantially all the debtor's assets;
>
> (6) The debtor absconded;
>
> (7) The debtor removed or concealed assets;

---

[9] Insiders "stand in close relation to the debtor as to give rise to the inference that they have the ability to influence or control the debtor's action." *Pompeo*, 2013 WL 2182304, at *7 (internal citations and quotations omitted). Transfers made between husband and wife are "especially suspect." *Cafaro v. HMC*, No. 07-02793, 2008 WL 4224805, at *8 (D.N.J. Sept. 8, 2008) (internal citations omitted).

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Burt*, 2014 WL 5437070, at *5 (citing N.J.S.A. 25:2-26).   "The proper inquiry is whether the badges of fraud are present, not whether some factors are absent." *MSKP Oak Grove*, 875 F.Supp.2d at 436.   "[T]he presence of a single badge of fraud is sufficient to cast suspicion on the transferor's intent."   *Id.* at 437 (citing *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463, 477 (1999)).   "Although the presence of a single factor … may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud."   *Id.* at 436.

Here, I recognize at least several badges of fraud sufficient to support an inference of intent, and reject Chef's Roll's futility argument as to this proposed claim.   First, as Malek alleges the Co-Founders paid family members and their spouses, at least some transfers were made to "insiders."   Transfers made between husband and wife are "especially suspect."   *Cafaro*, 2008 WL 4224805, at *8.   Second, since Malek claims the Co-Founders are funneling assets into other entities in which they have interests, as debtors the Co-Founders retained control over transferred assets.   Third, Malek characterizes the nature of certain payments as "mysterious" and alleges that the Co-Founders are falsely claiming that Chef's Roll is suffering financial losses while funds are being siphoned away. Malek elsewhere alleges that the Co-Founders "concealed from Malek information about their misconduct in the management of Chef's Roll[.]"   (ECF

25

No. 83-27 ¶ 82.)   These allegations support the factor that the Co-Founders moved and concealed assets.   As the parties have not addressed the badge-of-fraud analysis in briefing, I will not examine each factor enumerated in N.J.S.A. 25:2-26.   But I am satisfied that at least a few badges of fraud can be gleaned from the new pleading, such that the proposed fraudulent transfer claim is not clearly futile.

### vi.   Co-Founders as Individual Defendants

I find that the proposed addition of the Co-Founders individually as new defendants should be permitted.   In opposition, Chef's Roll argues Malek knew about the Co-Founders and their relationship to Chef's Roll "since the beginning of this litigation[,]" failed to assert any claims against them "until recently[,]" and offers no explanation for the delay.   (ECF No. 85 p. 18.)   It notes that Malek's "real motive" to add the Co-Founders is to protect Malek from the consequences of Chef's Roll's "imminent bankruptcy."   (*Id* p. 6.)   Malek, in response, points out that Chef's Roll can only oppose adding new parties on the basis of undue delay or prejudice.   (ECF No. 86 p. 11.)   He also notes that the Co-Founders have been participating in this matter "since the outset of the case," so they would not suffer undue prejudice if added as new parties.   (*Id.*)   Malek submits that the claims against the Co-Founders "are based upon the same core of operative facts as those against [Chef's Roll][,]" which makes it "unlikely that significant additional discovery [will] be needed[.]"   (*Id.*)

"[C]urrent parties 'unaffected by [the] proposed amendment' do not have standing to assert claims of futility on behalf of proposed defendants."   *Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, No. 13-05592, 2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014) (quoting *Clark v. Hamilton Mortg. Co.*, No. 07-00252, 2008 WL 919612, at *2 (W.D. Mich. Apr. 2, 2008)).   "Rather, current parties only possess standing to challenge an amended pleading directed to proposed new parties on the basis of undue delay and/or prejudice."   *Id.* (citing *Nat'l Indep. Theatre Exhibitors, Inc. v. Charter Fin. Grp., Inc.*, 747 F.2d 1396, 1404 (11th Cir.

1984)).   In addition, "[p]roposed defendants 'do not have standing to oppose' a motion to amend 'because they are not yet named parties[.]'"   *Id.* (quoting *State Farm Mut. Auto Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 146 n.1 (E.D.N.Y. 2007)).

With regard to the proposed addition of the Co-Founders as new defendants, for reasons previously stated, I find no undue delay.   There is, likewise, no undue prejudice to Chef's Roll occasioned by the addition of the Co-Founders.   The parties have substantially completed written discovery, and the depositions of several witnesses have already proceeded.   Malek represents that a "significant" amount of additional discovery is, at this juncture, unlikely. Chef's Roll cannot reasonably claim it is surprised by the proposed joinder of the Co-Founders: Malek's prior pleading filed on September 16, 2019, under the "parties" section, identifies the Co-Founders by name and residence.   (ECF No. 46 ¶¶ 4, 5.)   Since I find no undue delay and no undue prejudice to Chef's Roll, leave to add the Co-Founders will be granted.

## CONCLUSION

For the reasons stated, the Motion is **GRANTED in part and DENIED in part**.   A separate Order accompanies this Opinion.


   /s/ Edward S. Kiel
**EDWARD S. KIEL**
**UNITED STATES MAGISTRATE JUDGE**

Date: March 4, 2021